## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**Sheri Box**                                                                  **Plaintiff**

**v.**                          **CASE NO. 3:13CV00074 JTR**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                             **Defendant**

### ORDER AFFIRMING THE COMMISSIONER

Sheri Box seeks judicial review of the denial of her application for disability insurance benefits (DIB). Box last worked in 2008 as a cleaning technician.[1] Box applied for DIB on September 30, 2010, with an alleged onset date of April 1, 2009.[2] Box's date last insured (DLI) is December 31, 2013.[3] Box bases disability on blood clot in leg, stent in groin area and filter in chest.[4]

**The Commissioner's decision.** The Commissioner's ALJ determined that Box has not engaged in substantial gainful activity since the alleged onset date.[5] Box has severe impairments - peripheral vascular disease and obesity.[6] None of Box's severe

[1]SSA record at p. 136.

[2]*Id.* at p. 96.

[3]*Id.* at p. 110.

[4]*Id.* at p. 115.

[5]*Id.* at p. 13.

[6]*Id.*

impairments meet the listings,[7] and Box can perform light work except that she is limited to occasional stooping, crouching, crawling and kneeling; is unable to climb ropes, ladders or scaffolds; cannot perform jobs requiring the use of foot controls or the left lower extremity; and cannot be exposed to hazards.[8] The ALJ held that Box cannot perform any past relevant work,[9] but can perform the positions of assembler or assembler/small products, positions identified by the vocational expert (VE) as available in the state, regional and national economies.[10] Box's application was denied.[11]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[12] Box filed this case to challenge the decision. In reviewing the decision, the Court must determine whether

---

[7]*Id.* at p. 14.

[8]*Id.*

[9]*Id.* at p. 17.

[10]*Id.* at p. 18.

[11]*Id.*

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

substantial evidence supports the decision and whether the ALJ made a legal error.[13]

**Box's allegations.** Box maintains that the decision of the ALJ is not supported by substantial evidence because (1) the ALJ's RFC determination and hypothetical presented to the VE are not supported by the medical evidence; and (2) the ALJ's credibility analysis is flawed.

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[14] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[15]

**RFC determination and hypothetical.** Box maintains that the ALJ's RFC determination and hypothetical presented to the VE are not supported by substantial evidence. The ALJ held that Box has the RFC to perform light work, except that she is limited to occasional stooping, crouching, crawling and kneeling; is unable to climb

---

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[14]*Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[15]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

ropes, ladders or scaffolds; cannot perform jobs requiring the use of foot controls or

the left lower extremity; and cannot be exposed to hazards.[16] During the hearing, the

ALJ presented the following hypothetical to the VE:

> In this first model, I will ask you to assume we have a person the same age, education and work experience as what we find in Ms. Box's case. Let me ask you to assume that person is capable of performing light exertional work as it's defined in the Dictionary of Occupational Titles with these additional limitations that I'm going to outline for you. I'd like you to consider work that, in your experience, permits the worker to sit or stand at will. I'd like you to consider work that doesn't require foot controls for the left lower extremity. I'd like the work not to require climbing of ladders, ropes or scaffolds for the worker, with no more than occasional performance of all the remaining postural functions. And, lastly, I'd like the work not to require exposure to hazards.[17]

As an initial matter, Box asserts that the ALJ failed to include the sit/stand

option, as assessed by a state consulting physician, in the RFC and hypothetical. As

established above, the sit/stand option was included in the hypothetical. It is, however,

missing from the RFC. Because the ALJ included the sit/stand option in the

hypothetical, the failure to include it in the RFC is harmless error. Even if the sit/stand

option was included in the RFC, it would not change the outcome of the final

disability determination. It appears that this error is "an arguable deficiency in

---

[16]SSA record at p. 14.

[17]*Id.* at p. 39.

opinion-writing technique" that "had no bearing on the outcome."[18]

The RFC, with the intended inclusion of the sit/stand option, and the hypothetical presented to the VE are supported by substantial evidence. The Residual Functional Capacity Assessment[19] completed by a state consulting physician after reviewing Box's records sets limitations almost identical to those contained in the RFC and hypothetical. The state physician determined that Box is capable of performing light work after finding that Box can stand and/or walk about 6 hours in an 8 hour workday, and can sit for the same amount of time if allowed the option to alternate sitting and standing.[20] The ALJ places environmental limitations identical to those assessed by the state physician. The ALJ's postural limitations are even more restrictive than those assessed by the state physician.

In a general physical examination, a state examining physician determined that Box suffers from pain and edema in her left leg and swelling in her left knee.[21] The physician limits Box's ambulation.[22] In the same report, however, the physician notes

---

[18]*Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal citations omitted).

[19]SSA record at pp. 349-56.

[20]*Id.* at p. 350.

[21]*Id.* at pp. 334-39.

[22]*Id.* at p. 338.

that Box has no intermittent claudication.[23, 24] Additionally, Box can stand/walk without assistive devices.[25] In a review of Box's medical records, another state consulting physician went so far as to determine that Box's impairments are non-severe.[26]

The medical records also support the ALJ's RFC determination and hypothetical. Box's blood clot was discovered in April 2009 after admission to the hospital with extreme pain in her left leg.[27] The leg was swollen, pain was radiating to her back, and she dragged the leg as she walked.[28] Following discovery of the clot, Box underwent multiple types of treatment, including the placement of a stent in her groin and a filter in her heart.[29] She still has both.

---

[23]*Id.* at p. 335.

[24]Intermittent claudication is defined as "a pain, cramping, or weakness in the legs (usually the calf muscle of one or both lower limbs, although it can sometimes occur in the arms), especially when exercising such as walking or climbing stairs. The pain, which occurs because of reduced blood flow through the limbs, is intermittent and goes away when the person rests. It is . . . a symptom of peripheral artery disease." Liz Swain, 3 The Gale Encyclopedia of Med. 2385 (4th ed.).

[25]SSA record at p. 337.

[26]*Id.* at p. 344.

[27]*Id.* at pp. 177-78.

[28]*Id.* at p. 163.

[29]*Id.* at pp. 185, 189 & 286.

The notes from the University of Arkansas for Medical Sciences (UAMS) and Box's family treatment clinic establish that Box has experienced great improvement following and during treatment. Upon discharge from UAMS, it was noted that Box's left lower extremity edema was significantly improved with minimal pain.[30] Box's family treatment clinic noted that Box was feeling much better and the swelling was dramatically decreased.[31] In September 2009, Box returned to UAMS.[32] The notes from that visit also indicate improvement, stating that Box "ambulates without difficult, [has] [a] steady gait, adequate joint function, [and] denies pain."[33] Further, there is no swelling or discoloration, no edema, no joint stiffness or pain, and Box has the normal full range of motion in all joints.[34] Box's leg "looks quite good" and is symmetric with her right leg.[35] The physician notes that the biggest problem is some skin irritation from the compression stocking, and recommends Box switch to a different brand.[36]

---

[30]*Id.* at p. 304.

[31]*Id.* at pp. 161 & 330.

[32]*Id.* at p. 307.

[33]*Id.*

[34]*Id.* at pp. 308-09.

[35]*Id.* at p. 310.

[36]*Id.*

One of the last notes contained in the record is from July 13, 2011.[37] In the note Box complains of back and leg pain, but states that she has been picking up a two-year-old and doing housework, and that these activities may have strained her back.[38] The note indicates that Box suffers from chronic left leg edema, but that it has improved from years past.[39] On that day Box has mild edema in her left lower extremity, but is therapeutic on Coumadin, an anticoagulant Box takes daily.[40] The physician suspects that the back pain is due to muscle strain from housework, and recommends a heating pad, Tylenol and gentle stretching.[41] The treatment for Box's blood clot remains unchanged.[42]

The medical records establish that Box has basically been on the same prescription treatment plan since the clot was discovered. Although initially prescribed Lovenox injections and Coumadin tablets, Box's treatment plan was reduced to a daily Coumadin regimen only.[43] The Coumadin treatment will be lifelong, but the dosage

---

[37]*Id.* at p. 367.

[38]*Id.*

[39]*Id.*

[40]*Id.* at pp. 369-70.

[41]*Id.* at p. 370.

[42]*Id.*

[43]*Id.* at p. 323.

has been decreased.[44]

It is significant to note that although Box has been told by physicians at her family treatment clinic that she must have her international normalized ratio (INR)[45] checked monthly, she has not consistently reported for testing. It appears that in 2010, she missed five months of testing. In 2011, she missed eight months of testing. Box had no testing done in 2012. A January 19, 2012, letter to Box from the UAMS Family Medical Center in Jonesboro states that they have had difficulty getting in touch with Box and that she needs to contact them.[46] Indeed, there are no medical records from the latter part of 2011 or from the entirety of 2012. Inconsistent medical treatment weighs against Box's allegations of disabling pain and provides additional support for the ALJ's RFC determination and hypothetical. Substantial evidence supports the ALJ's RFC determination and hypothetical.

**Credibility.** Box further asserts that the ALJ erred in the credibility determination because the reasons given for discrediting Box are not supported by the law or the record. After reviewing the medical record, the ALJ determined that Box was not credible to the extent that her statements were inconsistent with the residual

---

[44]*Id.* at p. 322.

[45]INR is a measure of the time required for blood to clot. 3-I Attorneys' Dictionary of Med. I-60992.

[46]SSA record at p. 375.

functional capacity assessment. For support the ALJ gave the following reasons: (1)

no healthcare provider ever restricted Box from performing all work-related activities;

(2) Box's impairments are controlled with conservative medical treatment; and (3)

Box performs many activities of daily living without difficulty.

An ALJ must evaluate the claimant's credibility because subjective complaints

play a role in determining the claimant's ability to work.[47] To evaluate Box's

credibility, the ALJ followed the required two-step process and considered the

required factors,[48] so the dispositive question is whether substantial evidence supports

the credibility evaluation. The ALJ's determination that Box's subjective complaints

of pain and limitations were not credible to the extent that they conflict with the

assigned RFC is supported by substantial evidence.

The ALJ is correct that no physician restricted Box from performing all work-

related activities. As Box points out, one state examining physician did limit Box's

ambulation.[49] The same physician, however, did not restrict Box from performing all

work-related activities. Further, another state consulting physician determined that

---

[47]*Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[48]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[49]SSA record at p. 338.

Box could perform light work with specific restrictions.[50]

Substantial evidence supports the ALJ's determination that Box's impairments are being controlled by her current treatment plan. Indeed, Box's treatment plan has remained unchanged since 2009. She continues to take Coumadin daily and wears support stockings. The last comprehensive note from her family practice clinic states that Box is "therapeutic on Coumadin."[51] Further, as established above, Box's visits to her family treatment clinic for monthly testing became infrequent. If the treatment was not addressing her impairments, and Box continued to be in disabling pain, common sense dictates that she would have seen her doctor more regularly and sought a different treatment.[52]

In the decision, the ALJ determined that Box performs many activities of daily living without difficulty; specifically, household chores, preparing meals, laundry, shopping and caring for three small children.[53] Box testified that she is able to care for

---

[50]*Id.* at p. 350.

[51]*Id.* at p. 370.

[52]*See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision).

[53]SSA record at p. 16.

her children.[54] She helps with meals, laundry and dishes "when [she] can."[55] Further,

she is able to shop, but must "sit down a lot and rest."[56] These statements alone do not

establish that Box can perform these daily activities without difficulty. Other

evidence, however, supports the ALJ's finding. Multiple records indicate that Box is

able to walk and is not in pain.[57] Further, Box described to a treating physician how

she picks up her two-year-old and performs household chores like cleaning the kitchen

and bathroom.[58]

In addition to the reasons given by the ALJ for finding Box's allegations of

disabling pain not credible, there is extensive medical record evidence - discussed

above - establishing that Box's impairments are improving. This weighs against Box's

allegations.  The ALJ's credibility finding is supported by substantial evidence.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made

no legal error. For these reasons, the court DENIES Box's request for relief (docket

entry # 2) and AFFIRMS the Commissioner's decision.

---

[54]*Id.* at p. 31.

[55]*Id.* at p. 32.

[56]*Id.*

[57]Id. at pp. 307, 337 & 350.

[58]*Id.* at p. 367.

It is so ordered this 17th day of July, 2014.


_____
UNITED STATES MAGISTRATE JUDGE